419 P.2d 525

**C. H. GUTMACHER, G & W Investment Company, a copartnership, Appellants,**

v.

**H & J CONSTRUCTION COMPANY, Incorporated, a corporation, Appellee.**

**No. 8052.**

Supreme Court of Arizona.

In Division.

Oct. 26, 1966.

Elsing & Crable, Phoenix, for appellants.

Shimmel, Hill, Kleindienst & Bishop, Phoenix, for appellee.

UDALL, Justice

H & J Construction Company, Inc. (hereinafter referred to as plaintiff) brought this action for breach of contract against G & W Investment Company and C. H. Gutmacher (hereinafter referred to as defendants) and Richard Peil and Leon Normand. Prior to the trial plaintiff was adjudicated a bankrupt, whereupon the trustee in bankruptcy, Walter F. Fulford, was substituted as party plaintiff. On defendants' application leave was granted to bring in WonderBowl-Downey, Inc. as a third party defendant and to file a cross-claim against said defendant. Plaintiff's motion for a separate trial of the issues

existing between itself and defendants, apart from the third party complaint and answer, was granted and a separate trial was had. At the conclusion of the non-jury trial plaintiff and defendants filed simultaneous briefs and thereafter, the lower court ordered judgment in favor of plaintiff in the sum of $2,570.00 plus interest. Judgment was signed and filed, May 10, 1963, and on May 15, 1963, defendants moved for a new trial and to amend their answer to conform to proof. After both motions were denied, this appeal was taken.

The contract upon which the suit was based consisted of two letters, each dated August 1, 1961. Both letters were addressed to plaintiff construction company and signed by C. H. Gutmacher for G & W Investment Company and Richard Peil for Richard Peil & Leon Normand & Associates. It appears that defendants were acting as the agents of WonderBowl-Downey, a California corporation which was considering having a project constructed on certain property in Phoenix. Approximately two weeks previous to August 1, 1961, plaintiff had submitted a bid for the construction of said project. It developed that certain corrections in the foundation plans of the proposed construction became necessary, whereupon defendants employed plaintiff to perform the required engineering services in order to obtain the data needed to correct the plans. It was these engineering services which were the subject matter of the contract embodied in the two letters of August 1st.

The only witness at the trial was the witness of plaintiff, Edward L. Inman, who, at the time of the transaction was an employee of plaintiff. In Inman's capacity as estimator, he received defendants' letters and thereafter ordered a soil report and a topographical map from two independent engineering firms. Upon receipt of the report and map, Inman forwarded copies to an architect, Lee Linton, so that Linton could complete the foundation plans. There was no evidence adduced at the trial as to the amount which plaintiff

paid to the engineering firms for the topographic and soil reports but, in support of their motion for new trial defendants filed two affidavits which tended to show that said costs amounted to $729.00.

■ There are five assignments of error presented to us on this appeal. Assignment No. 1 is the trial court erred in construing the written agreement upon which plaintiff relied as an undertaking to pay the sum of $2,570.00, the amount of the judgment, for the reason that the writings, fairly construed as a whole, and taken together, and assuming every condition therein referred to was complied with by the plaintiff, imposed upon the defendants no more than the obligation to reimburse plaintiff for the actual cost of the services therein referred to. Since the interpretation of a contract is a question of law to be determined by this Court, we are not bound by the interpretation placed upon the agreement by the trial court. Daily Mines Co. v. Control Mines, 59 Ariz. 138, 124 P.2d 324.

The two letters which comprise the written agreement read as follows:

*Letter 1—*

"This is your authorization to proceed immediately to obtain the necessary topographic and soil information necessary to have Lee Linton's plans completed for submission to the Phoenix Building Department for a building permit. * * *

"As we have explained, we have only until September 6th to get construction started and thus we must have these plans approved as soon as possible.

"Mr. Robert Johnson of the Planning Department has suggested you deliver the plans to either—

> Hank Stroemer, or
> LeRoy Dennison

of the Phoenix City Building Department. Mr. Johnson has suggested that these men contact him, and he will explain to them the zoning status.

"It is further understood these costs shall be borne by the undersigned if you are not awarded the building contract, but if you are granted the building contract these costs shall be part of your costs.

"Upon receipt of this information, we shall have Linton's engineers make the necessary correction in the foundation plans for your submission to the Phoenix Building Department."

*Letter 2—*

"Pursuant to the attached letter of authorization pertaining to the engineering on the property at 43rd Ave. and West Thomas Road it is our understanding that the total costs on this will be $2,-570.00.

"It is further understood that if H & J Construction Co. is not award (sic) the contract for the construction we will no later than Sept. 15, 1961 pay this as per the attached letter."

Defendants raise three arguments in contending that the proper interpretation of the letters is they are obligated only to pay the actual costs of the services therein referred to and are not obligated to pay the sum of $2,570.00. Their first argument is that the next-to-last paragraph in Letter 1 contains an implied conditional promise to pay costs entailed in connection with "the necessary topographic and soil information" referred to in the first paragraph of the same letter. Defendants allege such is made clear by the declaration in Letter 1 that if plaintiff should be awarded the contract, the costs "shall be part of your costs" because, while "costs" may be absorbed by a construction company, this could not be true of a figure which included a substantial markup.

Defendants' second contention is that the statement in Letter 2 that "our understanding" as to what the total costs will be does not alter the conditional nature of defendants' obligation, for such does not amount to a promise to pay the sum of $2,570.00 regardless of what the costs might turn out to be; the statement is merely a recital, a statement of belief or a statement of information. To substantiate their contention, defendants point to the fact that had plaintiff been successful in its bid for the proposed construction, it would simply have absorbed the actual costs, but if plaintiff was not successful plaintiff would be entitled to the mentioned sum, even though this latter sum was in excess of its actual costs.

The last argument of defendants is that the circumstances of plaintiff and defendants on August 1, 1961, indicate the contract was merely a conditional undertaking to reimburse actual costs. They contend plaintiff was interested in the general subject matter of the letters as a bidder on the proposed construction and accordingly, was by no means a stranger to the project but instead had an interest in seeing that the "necessary work" would be done so that the plans could be conformed to the building site, a permit secured and the project proceed. Under such circumstances, the undertaking of defendants to pay costs and not more, appears as a logical and perfectly reasonable aspect of the overall project in which both plaintiff and defendants were interested.

In refutation of defendants' interpretation of the agreement, plaintiff alleges there was no issue of contractual construction even before the trial court in view of the admissions of defendants in their pleadings and defendants' failure to assert their contentions in the lower court. The only issue as between plaintiff and defendants regarding the existence, contract price, and performance of the contract was that directed to performance on the state of the pleadings as they existed at the time of trial. Plaintiff argues that the allegations of the contract between the parties as contained in paragraph II of the complaint and the answer support its position. The applicable section of the complaint reads:

"II

"That, on or about the 1st day of August, 1961, the defendants, and each of them, employed the plaintiff to perform

engineering services on certain property located at 43rd Avenue and West Thomas Road, Phoenix, Arizona, and agreed to pay for the same the sum of Two Thousand, Five Hundred Seventy Dollars ($2,570.00) on or before the 15th day of September, 1961; that said agreement was in writing."

The responding paragraph in the answer states: "Admit the allegations of paragraph II of the complaint * * *."

■■ In view of the above, it appears there was no contract for the trial court to construe as that issue was not before the court. However, even assuming that it was before the court as defendants argue, we are of the opinion defendants' contention that the words "your actual costs" are impliedly inserted in Letters 1 and 2 is without merit. In order to construe the contract as having that meaning we would have to hold that plaintiff agreed to do certain work for defendants with no profit accruing to it for such work. We believe it unrealistic to think that in the commercial world of the present day a commercial enterprise, bound by no extraordinary ties to another, would handle a transaction at no profit to it. A more logical explanation for the contract entered into by the parties in the case at bar seems to be that defendants found themselves pressed for time and were therefore unable to shop around for the lowest price. The second paragraph of Letter 1 evidences this fact:

"As we have explained, we have only until September 6th to get construction started and thus we must have these plans approved as soon as possible."

The time limitations are readily apparent since the letter is dated August 1st and construction had to be begun by September 6th. Only a little over one month remained in which defendants had to obtain the necessary topographic and soil information so that the foundation plans could be corrected and then submitted to the building department for its approval, which approval was necessary before a building permit would be issued so that construction could begin.

Thus, when plaintiff was asked by defendants to do the job, plaintiff recognized the position defendants were in and merely took advantage of the situation to enter into a favorable contract for itself.

We think that when the foregoing is considered along with the admission in defendants' answer and the express wording in Letter 2 that "it is our understanding that the total costs on this will be $2,570.00", and "if H & J Construction Co. is not award (sic) the contract * * * we will no later than Sept. 15, 1961 pay *this* as per the attached letter", [emphasis added] that the trial court did not err in interpreting the contract.

■ Defendants assert as their Assignment No. 3 that the trial court erred in rendering judgment for plaintiff for the reason that the proof affirmatively showed the conditions precedent to the defendants' obligation under the contract had not occurred nor been complied with by plaintiff, and there was further a failure of proof as to any excuse for such nonoccurrence or noncompliance. The argument is that Letter 1 contains certain conditions and directions which are either plainly stated or clearly implicit; one such condition required plaintiff to "obtain the necessary topographic and soil information" and a second condition required plaintiff to deliver the information to defendants so they could proceed to have the necessary corrections in the plans made by the architect's staff. Defendants contend plaintiff did not comply with the second condition of performance mentioned above because, instead of delivering the information to defendants, plaintiff sent it directly to the architect.

We view Letter 1 as requiring plaintiff to do two things in full performance of its obligations under the contract: one, procure the topographic and soil information necessary to complete the architect's plans for submission to the Phoenix Building Department for a building permit and two, after receipt of the completed plans from the architect, deliver them to one of two named gentlemen in the Phoenix Building

Department. Defendants concede that plaintiff procured the information necessary for the architect to complete the plans and we deem plaintiff's lack of performance as to delivering the completed plans to the building department as excused by reason of the fact that the architect never completed the plans and returned them to plaintiff.

Therefore, we perceive the sole question of performance to be, whether plaintiff fully performed its obligation under the terms of the written agreement by sending the soil and topography reports directly to the architect. Defendants contend that the statement, "upon receipt of this information, we shall have Linton's engineers make the necessary correction in the foundation plans", makes it clear plaintiff could perform only by so doing. On the other hand, plaintiff argues the above quoted statement is nothing more than an indication of the ultimate destination for the topographic and soil information. It is conceded by plaintiff that defendants did not specifically ask plaintiff to transmit the report directly to the architect, but plaintiff asserts it is customary in the construction industry for a construction company engaged to procure information, to transmit such to the party, who, next in the normal course of construction events, would need the information. Plaintiff further contends its conduct was acceptable because the record shows that plaintiff was experienced in its line of endeavor and defendants recognized the fact; also, that there had been a previous course of dealing between plaintiff and the architect and that the only party who could make any use whatsoever of the requested information was, in fact, the architect.

After due consideration we are of the opinion that plaintiff substantially performed its obligations under the agreement. Furthermore, we think that by sending the topographic and soil reports directly to the architect, the plaintiff handled its obligation in a most appropriate manner under the facts of this case, for it must be remembered defendants had expressly stated in Letter 1 that "time" was short, that is: "we have only until September 6th to get construction started and thus we must have these plans approved as soon as possible." Since the information was to be used by the architect and only he, no matter from whom he received it, and with time being an important consideration, we cannot hold that plaintiff's action, in choosing to send the information directly rather than indirectly, should result in plaintiff not being able to recover in this suit.

The remaining three errors assigned by defendants are predicated on the assumption that the trial court misconstrued the meaning of the contract. Since that assumption is not valid under our interpretation of the contract, the questions raised by said assignments of error are moot.

For the foregoing reasons, the judgment of the court below is affirmed.

STRUCKMEYER, C. J., and McFARLAND, J., concur.